ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.

---

ARTHUR HULL, Appellee, v. ROBERT A. CURTS, Appellant.

**BROKERS:** Compensation—Financial Ability of Purchaser. It is quite elementary that a broker is not entitled to a commission when his own evidence demonstrates that the lessee furnished by him was unable to finance a 99-year lease of property.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MAY 13, 1924.

REHEARING DENIED SEPTEMBER 20, 1924.

ACTION to recover commission alleged to have been earned in finding a lessee for property. At the close of plaintiff's testimony, defendant moved for verdict. The motion was overruled, and defendant elected to stand on the motion, and introduced no testimony. The case was submitted to the jury, verdict was returned for plaintiff, and judgment entered thereon. Defendant appeals.—*Reversed and remanded.*

*Clinton R. Dorn,* for appellant.

*C. S. Cooter,* for appellee.

ARTHUR, C. J.—I. Defendant was the owner of a three-story brick apartment house, with eighteen apartments of three rooms each, with basement under the entire building, located on a piece of ground with about 50 feet frontage, at 812-14 Pleasant Street, Des Moines, Iowa, of the value of about $45,000. There

was a mortgage of $10,000 on the property, bearing 6 per cent interest. Plaintiff was a real estate broker, doing business under the name of Arthur Hull Realty Company. Sometime in March, 1921, defendant listed with plaintiff his apartment property, for a 99-year lease. The listing was oral. At the time of the listing, plaintiff made a memorandum, which was not signed by defendant, as follows:

"Apartment
812 & 814 Pleasant St.
24 flats, $45,000—$10,000 Mtg.
6% $10,000 down and monthly payments.
Balance on contract.
R. A. Curts, present yield $700."

The terms of the listing were meager, and it is difficult to tell what they were. As we gather it, one of the terms agreed upon was that the rental figure should be $2,500 a year net to Curts. The $2,500 was to be paid annually in advance. As testified to by Hull: "It was to be a net rental to Mr. Curts, with all expenses of maintaining the property kept up and paid by the lessee. In other words, Curts was to have no further expense from the time of taking over the property by Mr. Jordan," the person whom Hull produced as a lessee of the property. Hull testified that Curts told him that, if he could "obtain the $2,500 a year on a 99-year lease, net to him, it would be acceptable to him. We agreed on a commission of two and one-half per cent on $45,000, or $1,125." Curts had no talk with Jordan, the proposed lessee. Hull, Curts's agent, communicated to Curts what Jordan proposed to do, and Curts, according to the testimony of Hull, insisted that Jordan make a written proposition. Later, Jordan addressed a proposition in writing, not to Curts, but to Arthur Hull Realty Company, as follows:

"I wish to make you the following proposition to lease the property you showed me, known as Curts Apartments, Pleasant Street, between 8th and 9th, Des Moines, Iowa, for a term of 99 years, starting May, 1921. I will pay a yearly net rental of $2,500, payable in advance. I attach to this proposition as a part of the first yearly rental price a check for $100, to show my good faith, to be held by the Arthur Hull Realty Company

until the lease is finally executed. I will complete the lease upon examination and acceptance of abstract, on or before May 1, 1921. When the owner has accepted this offer to lease, it shall thereupon become a binding contract between the owner and myself for the leasing of said property upon the terms set forth in this offer. Included as a part of this offer is the following: It is understood that lessee shall pay all taxes, upkeep, repairs, etc., during the entire period.''

Under the terms of the listing, the lease was to be in writing. It will be observed that, in the written proposition, no mention is made of how the $10,000 mortgage resting on the property was to be taken care of, or the interest thereon, or of any liens or charges which might attach to the property during the 99-year term of lease. The check mentioned in the proposition was not made payable to Curts. Curts was just starting from Des Moines to his home at Hannibal, Missouri, when Jordan's written proposition was handed to him. Curts said:

''I am going to take this a day or two. I want to look up this fellow Jordan.''

Curts made a memorandum on the bottom of Jordan's proposition, as follows:

''Hull Realty Company are to let me know if Mr. Jordan can qualify; also if he will pay interest on the $10,000 now against the property.''

He mailed the proposition, with said notation on it, and returned Jordan's $100 check to the Arthur Hull Realty Company.

On May 12, 1921, Jordan wrote Arthur Hull Realty Company, saying that he was ready to carry out his part of the agreement; that his proposition was to be accepted or rejected on the 1st day of May, 1921; and that he assumed that the proposition was accepted. On May 13th, the Hull Realty Company wrote Curts, inclosing Jordan's letter, and saying:

''Mr. Jordan doubtless is correct when he states that he assumes this deal was accepted unless rejected by the 1st day of May, 1921.''

Curts replied to the Arthur Hull Realty Company, inclosing

the written proposition which he had taken with him to Missouri, and said:

"I was surprised to get your letter of May 13th, but more so at its contents as it was fully understood you were to let me know if Jordan could qualify and pay interest on the $10,000."

Following, on May 18th, Hull again wrote Curts, acknowledging receipt of his letter of May 16th, and expressing surprise that Curts should doubt the financial ability of Jordan, saying, in substance, that he was sure that he had made it clear that Jordan was in a position to "secure you absolutely to your entire satisfaction;" that Jordan was "amply able to pay interest on the $10,000 incumbrance, and pay every expense incidental to the future maintenance of the property which would include taxes, insurance, repairs, janitor service, purchase of fuel, etc." Hull demanded an answer by return mail, accepting the Jordan proposition. Curts refused to accept Jordan as a lessee, and refused to pay Hull a commission for his claimed services in producing Jordan as a lessee. Among the reasons for rejecting Jordan as a lessee was that he had not and could not qualify financially, as being able and ready to perform the lease. This action was then brought, to recover a commission of $1,125 for procuring Jordan as a lessee who was willing, ready, and able to perform the lease.

II. At the close of plaintiff's testimony, defendant moved for a directed verdict on many grounds. Principal among them were that there was not sufficient evidence upon which to base a finding by the jury that Jordan, the lessee produced by plaintiff, was ready, willing, and able to carry out the lease upon the terms of the listing; that the proposition submitted in writing by Jordan did not conform to the terms of the listing; that the evidence fails to show that Jordan was financially able to carry out a lease of the property for 99 years; that the testimony affirmatively shows that Jordan was not ready and able to carry out the proposed lease; that he was unable to even pay the first year's rental, of $2,500; that Jordan was an undisclosed partner of plaintiff's.

The rule in this class of cases is well settled, and may be announced as elementary, that, to entitle an agent to commission,

the purchaser or lessee produced by him must be willing, ready, and able to buy or to perform the lease of the property on the authorized terms.

III.   There is evidence supporting the claim of plaintiff that Jordan was *willing* to become lessee of the premises.   Now let the record be examined, to ascertain what evidence it contains as to whether Jordan was *ready* and *able* to carry out the proposed 99-year lease on the property on the terms of the listing: that is, the readiness of Jordan and his financial ability to meet the requirements.   Did the evidence bearing on these propositions warrant submission of the case to the jury?   Was it reversible error to overrule the motion for a directed verdict?

H. S. Jordan, the proposed lessee, a young man 24 years old, testified to making a written proposition, addressed to the Arthur Hull Realty Company, the agent of Curts, to lease the Curts premises; that the property was shown to him by Hull; that he had stated in the written proposition that he would pay a yearly net rental of .$2,500 in advance; that he had given the Realty Company a check for $100 at the time he made the written proposition, and that the check was good; that he never talked with Curts about the matter of leasing the premises; that he said to Hull or Arrasmith, agents of Curts, that he would pay the taxes, the insurance, upkeep, and repairs, and that he would pay the interest on the $10,000 mortgage during the life of the lease, 99 years.   Over apt objections, Jordan was permitted to testify that he had, at the time he made the written offer, "funds available, the $2,500" to make the first rental payment.   On cross-examination, questions were asked and answered by Jordan as follows:

"Q.   What do you mean by the term 'available?'   Is it that you were borrowing money to make this payment?   A. Possibly,—yes.   Q.   Isn't it actually what you mean?   A.   Yes, partly.   Q.   You were arranging, were you not, for a loan at the Security Loan & Trust Company?   A.   Yes.   Q.   By a mortgage upon property?   A.   No.   Q.   Simply a loan?   A.   A straight loan.   Q.   That loan was never completed?   A.   No, sir.   Q.   You never had the money on deposit in the Security Loan & Investment Company or the Security Loan Savings

Bank? A. No. Q. Did you, at the time you made this proposition, have $2,500 in money in the bank, to make a payment? A. I did not. I had arranged to borrow $1,500 at the Security Loan & Investment Company.''

W. H. Barnard, president of the Security Loan & Investment Company and Security Trust & Savings Bank, testified to a conversation with Jordan about a loan, wherein Jordan told him that he was figuring on a long-time lease of a building on which there was a mortgage lien held by his (Barnard's) bank, and that, if he secured the lease, he wanted to know if the bank would furnish part of the money for the first year's rental. ''We agreed we would, if that was completed. It was wholly contingent upon completion.'' He also testified that the amount asked for by Jordan was about $1,000 or $1,500; that no note was given, and no loan was completed; that the arrangement was that, if the deal went through, Jordan would borrow $1,000 or $1,500, which he lacked to make the first year's payment of rent; that nothing was said about furnishing the money to meet subsequent years' rent. Barnard further testified:

''Our arrangement was with Mr. Jordan, and a part of the consideration was that the entire income from the building would be deposited and checked out through our bank; but there was no promise for any further advances, and nothing asked beyond that.''

The foregoing evidence constitutes all there is in the record bearing on the readiness and financial ability of Jordan to handle the proposed deal of leasing the property in question for a period of 99 years. There is no direct evidence that Jordan had any money whatever, or property of any kind. He did not show that he had any amount of money on his person or anywhere. There is only the inference that he had $1,000, because he wanted to borrow $1,500 to be able to pay the first year's rental of $2,500. It affirmatively appears that he had no money on deposit in any bank. Jordan did not offer to give security, in the way of a bond or otherwise, for the payment of rentals, the interest on the mortgage, or charges that might accrue against the property. The record not only fails to show that Jordan was ready and able to carry out the proposed leasehold, but it

affirmatively appears, as a matter of law, that he was not ready or financially able to do so. If the evidence was sufficient to warrant submission of the case to a jury on the propositions of the proposed lessee's being "ready and able," then a "wayfaring man," without a dollar's worth of property of any kind, may offer to buy or lease premises of large value for a long period, and make out a case for submission to a jury on the bald statements of himself and a disloyal agent that he is qualified to meet the requirements of purchase or leasehold.

We will not enter into a discussion of other questions raised, as to whether or not there was fatal variance between the listing and the written offer made, nor as to whether Jordan was, in fact, Hull's partner, at the time of the dealings with Curts, and some other questions raised on this appeal. Our discussion is sufficient to dispose of the case. We hold, as above indicated, that, as a matter of law, giving the evidence the most favorable interpretation for plaintiff, the evidence produced by plaintiff failed to make out a case for submission to the jury; that defendant's motion for a directed verdict should have been sustained; and that it was reversible error to overrule said motion.

Defendant's motion for judgment in this court is overruled.

The case is reversed and remanded.—*Reversed and re-manded.*

EVANS, PRESTON, and FAVILLE, JJ., concur.